Good morning, everyone. The first case is Williams v. Mishner. Mr. Savoie. Good morning, Your Honors. My name is Robert Savoie. I represent Patricia Williams. And I request that I be allowed to reserve three minutes of my time for rebuttal. I think it is established beyond dispute in the case law. Pull this up just a little bit. I believe it's established beyond dispute in the case law of this circuit that in order to establish a substantial justification, the commissioner must make two separate showings of substantial justification, one at the administrative level and one at the court level. I think that the court below failed to make the determination at the administrative level. Can I ask you a question about that, Mr. Savoie? Yes. Do you have the administrative record with you? No, I don't. Well, I'm looking at page 19, which happens to coincide with page 7 of 10 from the ALJ's opinion. And the ALJ begins on that page and goes on for a couple of pages to describe the evidence and to arrive at a residual functional capacity finding. And that residual functional capacity finding was that your client could do light work, light physical exertion, right? I mean, that's the state of the record, correct? Yes, something like that, yes. Okay. Then on page 21 of the record, which corresponds to page 9 of 10 in the opinion, the ALJ says that the Dictionary of Occupational Titles, which is in the record, characterizes the claimant's past work, automobile service advisor job, as requiring light physical exertion, retail store manager job as requiring light physical exertion, and office clerk job as requiring light physical exertion. All those statements are made prior to mentioning anything about the vocational expert's testimony. My question to you is, are those statements in the record, do they compel logically the conclusion that in the ALJ's mind the residual functional capacity finding equated to a statement that she can do her past relevant work because all her past relevant work was within the category of what I have, I, the ALJ, have just found to be her residual functional capacity, before any statement about the vocational expert is made? Well, Your Honor, I think for our purposes, if there's an argument there, I don't recall exactly what the passages are referring to, but if there's an argument there, it hasn't been made until now, and I think it should be regarded as waived. I mean, we're no longer dealing with the merits, I think, of the case. I thought that was the argument, in essence, that I was getting from the government, which is that, look, you can ignore the statement about the vocational expert, the misstatement about what the vocational expert said, because there is, in the ALJ's findings, a foundation for the denial of the benefit. Actually, eight out of nine of the findings. Well, if I may, I'd like to complete my answer. What the government has argued, what the government did argue, was that, without ever explicitly acknowledging there was any error in the ALJ's decision, that the decision should be sustained on the basis that Williams could do her past relevant work as actually performed. And I thought what you were quoting me, if I understood what you were quoting, there was some other ground for past relevant work as generally performed? Is that what you were getting at? No, what I was trying to ask you is, and perhaps inartfully I apologize, is if you actually just excise the misstatement about the vocational expert, just take it out, is there not still, in that reasoning by the ALJ, a statement that I find you have light exertional work capacity, based on all this medical evidence which I've gone through, I look at your past relevant work, each of those involves light exertional capacity, and therefore, logically, the conclusion is you can do your past relevant work, although the therefore piece is not there. Well, what I think is clear is that the ALJ made the finding, past relevant work as generally performed, that the ALJ explicitly based that finding on the vocational testimony, which didn't exist, and that the alternative argument involved past relevant work as actually performed, but that isn't what the ALJ found, and it's not quite as simple as saying light work, light work, because there are complications, as I tried to point out in my brief, such as how many hours she had to work. Isn't there also a question here as to whether or not this is light work or medium work? Well, if her credibility had been, which was not discredited, if she were believed, this would be medium work, not light work. Yes, that's correct. And the finding that was referred to were made in the area of allegedly the work being light work, and whereas it appears from the record that this is, if you credit her, medium work, not light duty work. Yes, based on her testimony, yes, that's correct, which may be why the ALJ resorted to the alternative. Well, the point is this. If there are sufficient facts in the record from which the ALJ could have held, as he did, but did not cite those as justification for the holding, are we in a position to say, as we do often with district courts on appeal, say that the record as a whole, maybe not for the reasons stated by the district judge, but for the record as we find it, justify the position of the party? Why can't we resolve it in that way? Well, I think because we're dealing with a case where the ALJ provided the rationale. The merits litigation is over. The ALJ provided the rationale. The ALJ provided a particular rationale, citing specific evidence which did not exist and therefore obviously is not substantial. And I think that shows, that kind of dictates a finding that the administrative law judge's decision was not substantially justified. Are we in a position, or should we be in a position in adjudicating this fee controversy to factor in what we perceive may occur on remand? Because obviously on remand, the government is going to point this out to the ALJ and if the ALJ buys it, the petitioner will not prevail. Well, the remand has already been resolved and the petitioner has prevailed. I'm talking about on the merits. If the ALJ is apprised of the fact that there are facts of the record from which the government's position can be justified, are we in a position in adjudicating the fee to determine holistically that a fee is not justified because the government position ultimately will prevail? Well, it didn't. It did in this case. I'm saying ultimately on remand. Yes, that's what I mean. She's had her hearing. She's been awarded benefits. She has been awarded benefits. Yes. Yes. Well, let me posit a hypothetical for you. Let's take it out of the context of this case and imagine with me, if you would, a case where the ALJ makes multiple findings of fact and on one, say there are 15 or 20, on one out of all of them, the ALJ has in the record and states in the record a particular basis for a finding. However, then baldly, terribly misstates part of the evidence. Is the position that you're taking that no matter what is in the record, and again, I want to emphasize I'm not talking about this case. I'm asking you in the abstract that no matter what else is in the record, the fact that the ALJ misstates a piece of the evidence, which would require a remand, is in and of itself a basis for saying no substantial justification, therefore fees. That's a little bit abstract. Indeed. If there is a finding that if a case is remanded because a crucial finding was not supported by substantial evidence, then I believe under the law of this. Well, you just said if it's not supported by substantial evidence, and that's not my hypothetical. My hypothetical is there is substantial evidence in there, but the ALJ, even though he or she has spoken about that, doesn't say I'm relying on that evidence. It says I'm relying on this other piece of evidence, which is just wrong. It isn't in the record, the piece that the ALJ claims to be relying on. It's not exactly clear from my hypothetical why it is remanded if there is substantial evidence. Perhaps inadequate explanation, I suppose it would be a violation of law, and it would violate established precedent. I think there would certainly be a strong case against the claim of substantial justification. I guess what I'm trying to ask is sort of what the question of the generality level, which the government has put before us, that according to the government, the Ninth Circuit says you can drill down and look at just specific piece and say, oh, the government couldn't have been justified in that. But at a higher level of abstraction, are they justified overall? You could say they're justified. I'm inartfully asking you to address that level of generality argument they've made. Well, the level of generality, as applied by the court, I think overlooked the dual nature of the inquiry. First of all, and most importantly, I think that's the most important error in this case. I said in my brief, I quoted from the court below in my brief, the position of litigation includes the position taken in litigation and the position that made the litigation necessary in the first place. And I stated, despite this general statement, the court failed to apply the principle. I think with further rereading of the court below decision, the way I would word that is the court misunderstood the principle and failed to apply it. Because the more I reread it, the clearer it becomes to me the court did not, it's not a question of poor draftsmanship. The court below did not intend to separately address the issue of substantial justification at the administrative level. And I think what convinces me most of that is this reliance on this Seventh Circuit Jackson case, which is quite frank, which is clearly inconsistent with the case law of this circuit, including, most notably, Taylor v. Heckler. Well, they repeatedly point to and talk about the district court's statement with, in the evidence, or the district court's statement about, I'm trying to find the exact wording, you sort of mock it and say, I have no idea what the district court means by this comment. But where the district court alludes to saying, in effect, I think we would have gotten there anyway. It's not outcome determinative. That's, I think, the phrase. Not outcome determinative. Well, I didn't mean to mock it. It's just I don't really understand it. Were we apprised in the briefing of what occurred on remand? No. As of the last filing, the hearing was scheduled. We were not apprised that there was an award of benefits here? No, it hadn't happened yet. Pardon? It hadn't happened yet. Okay. In other words, there's nothing in this record that, it's something that snoozed the mids. When you said that, it went over my head completely. I didn't know that she had been awarded benefits. Yes. Same ALJ adjudicate this? No, it was a different one. And found that there was, that she was, she could not do her past work? Yes. Based on basically the same evidence that was before this ALJ, is that it? Well, I can't answer that because I didn't handle that matter. In any event, she prevailed on whatever evidence was before the new hearing. Yes. All right. Thank you very much. We'll have you back on rebuttal. Ms. Joswiec? Good morning, Your Honors. Allison Joswiec for the Commissioner of Social Security. And I would just like to clear up. Let me ask you a question first about the proper standard that we should apply. There are some variances around the circuits. We haven't completely, we haven't definitively enunciated a standard. What do you think we should adopt here in the Third Circuit? Are we talking about your standard of review for being abusive discretion versus plenary, or we're talking about generality? Generality. I most definitely believe the generality reflects the intent of the EJA. I don't believe in this case that we're asking the court to come down and state what the standard is. In this particular case, I believe we can find that the district court did not abuse its discretion in looking at the generality and determining that it's a better approach, particularly in Social Security cases. Now, you're saying that we can do that in this particular case, but assuming we want to set down a standard, what standard would we set? If that were the case, I believe that the standard, the generality, really what they're looking at is what are the circumstances in the case? They all vary. How egregious was the error? What caused the remand, and what did the agency then argue? And I think, Your Honor, as you were discussing and you were giving hypothetical examples, I think your hypothetical examples prove why the inclusive as a whole approach, totality of the circumstances approach is a better approach because there are times when the commissioner's position may very well not be substantially justified. I don't want to interrupt you, but I don't think you're answering Judge Sirica's question. It's my question, too. Are we evaluating this case on a plenary review or are we evaluating what happened below for an abuse of discretion? We want to know our standard, what you think our standard is. That's how I started off, actually. You didn't tell me yet what our standard is. Okay, I'll go back to that. The standard would be for whether the court abused its discretion. I don't believe that there was any misapplication of law. Isn't it automatically an abuse of discretion if a tribunal or a court bases its decision on facts which are not in the record? No, it's not an abuse of discretion. We're not discussing the merits of the case. Excuse me. I'm talking about the discretion of awarding fees. If that is based upon a reading of the case and a determination based on facts which are not before the court. Right. I see what your question is, but what I'm saying is I don't believe that it is at all an abuse of discretion because what the district court, what Judge Rubino found, is that the agency was substantially justified in taking the position or in arguing there was harmless error. Ultimately, of course, the district court, the same court that found we were substantially justified, was not comfortable with the harmless error argument because they did remand the case. So they're not basing the substantial justification analysis on the fact that there was a misstatement. They're simply stating that in the circumstances of this case, it was not unreasonable for the agency to assert that position given that this information is in the record and given that vocational expert testimony is not required for a Step 4 finding. As to generality, however, is your position that the Fourth and the Seventh Circuit have it right and the Ninth Circuit has it wrong? Well, as I discussed in my brief, it seemed to me from reading Judge Rubino's opinion that he didn't entirely reject the Ninth Circuit's concern. We looked at the... No, no, no. What are you asking us to adopt? I'm sorry. That's what I was going to say. In my brief, I discussed it seems to be a bit of a hybrid approach. It's not an outright rejection of the Ninth Circuit. Is that what you want? I'm not interested in what he did right now. We're trying to find out what you, as the government, speaking for the government, believe, speaking as to generality, is the right standard. Is it the Fourth and the Seventh Circuit's approach? Or is it the Ninth? Or is it another approach? Something else. Okay. I guess that's what I was getting at with a bit of a hybrid approach. Hybrid meaning Fourth and Seventh mixed with Ninth. To the extent that the Ninth Circuit says focus on this specific issue in the remand, I believe that the district court in this case did do that, and I think that was appropriate because he looked at it, though, in the context of what else was going on in the case. If you look at strictly why we were remanded, it wasn't a fatal error. Why can't you get that under the generality approach? It is. It's part of it, I believe. I don't think it's as – Then why do we need to adopt that part if it's part of the Fourth and the Seventh Circuit approach? Because when I say it's a part, I don't think – If we write a precedential opinion, we're going to have to set down the standard. We're trying to find out what that standard is from the government's position. The government's position, if it were to be the standard, the approach of the Fourth and the Seventh is the better position as it's more directly reflective of the intent of the EJAC to consider the inclusive whole. Again, I say that because there are cases such as this one that were remanded, but it's not a remand for a fatal error. When the court said non-outcome determinative error, as the case stood at the time of the remand, we had information in the record that was constant. We had the light work finding. We have the jobs, the past work jobs that were light. We know based on the agency's rulings and law that that's all that's needed to make that – make a comparison. And the rulings also state that as long as that shows she can do – a claimant can do past work as generally performed or as she actually performed it. It's either one. That's why we were not unreasonable in making that argument. That does not matter. Does it matter that since this has happened, she's been found – she's prevailed on the remand? Should that play into this at all? I'll tell you why that doesn't matter. The one missing piece of information that Mr. Savoy did not mention is that the RFC finding changed on remand, which can only indicate to me because there was a subsequent application, the decision states – the decision on the remand states that a subsequent claim was associated with her file. So the constants that I'm referring to at the time, the snapshot in time, when this remand occurred, we had a light work finding RFC that matched. Whatever happened on remand with regard to whatever evidence adds variables that we're not aware of, that doesn't affect or say why we weren't substantially justified at the time. On remand, they found she had an RFC for sedentary work, which completely changes now the past work finding. And again, the only thing that – excuse me – that I can state is that that had to have been based on the new claim that she filed that was associated. The ALJ decision on remand makes reference to a subsequent claim that was associated with her file. So to me that does not make a difference. It doesn't change what happened in this case. It doesn't render our position not substantially justified given what was in the record at the time. Well, your best argument on that is it's not a lose-or-pays statute. They still have to prove that your position wasn't justified. But based on what happened here, the agency's position, and that's part of the government, was incorrect. And, in effect, benefits never would have been applied if this hadn't been taken up. Is that correct? Well, no, I'm not going to agree with that because the government's position was not wrong. In fact, the statute itself, the EJIA statute, states what the position is below at the administrative level and what it is litigation. The definition in the EJIA of what position means was the action the agency took that caused the litigation. The action the agency took is denying the disability claim, finding her not disabled. That is completely supported. That's the argument. We were substantially justified in arguing that that position was substantially justified because we had information. The finding of her being not disabled, and if you break it down one step further, by virtue of her ability to perform her past work. No, our position was the same at the administrative level. The only difference, of course, is that on review, we say we argue substantial evidence supported that same position, that she was not disabled because she could perform her past work. Let me ask you to turn to the Stewart decision out of the Seventh Circuit for a minute and respond to this language from it. In there, the court says that the ALJ himself must connect the evidence to the conclusion through an accurate and logical bridge. Now, that didn't happen here, did it? No, and that's why the inarticulate or the misstatement in the ALJ decision is what caused the remand. That we agree on, the merits we lost. It went back for that connection to be articulated. Well, the Seventh Circuit is discussing this in the context of EJA and fee awards. Is the implication from the Seventh Circuit's decision that if the ALJ doesn't construct the bridge, that that means you can't construct it after the fact in litigation? No, because, again, it depends upon the nature of the error. There are cases, and I know that appellant's counsel referred to the Hackett decision in the Tenth Circuit, and that's a good example of where the agency, I hate to agree with the outcome on that case, which is an agency decision adverse to the agency, but it does highlight in there the situation where the agency may very well not be substantially justified because the information it's seeking to supply is fatal to the agency itself meeting its burden further in the sequential evaluation process. So in that case, it involved a Step 5 finding, where the burden shifts to the agency for us to be able to find jobs or identify jobs that match the RFC. In this particular case, it's different, because the burden was still on the claimant to establish at Step 4 that she was not able to perform her past work. And I think there's a distinction there. It's not a blanket approach. It's very case-specific, and I think that is what Judge Rubino was noting in his decision. It's very case-specific. You look at the magnitude and materiality of the error. There certainly can be times when the agency is arguing to the district court to supply missing information knowing that we may have it somewhere, but where the court will say, well, that's fatal to your case because now you can't meet your burden. In this case, it wasn't fatal. It was an outcome-determinative meaning at this time. Well, are you suggesting that as long as the burden is on the claimant, that the agency can play a sort of litigation game where the ALJ doesn't identify the relevant evidence and the claimant has to litigate through that process and then has to litigate through the district court and finally prevail, and then because a savvier lawyer months, maybe years down the road, is able to say, well, nobody saw it before, but if you look in that corner, you'll see X, that that means that the agency wins and the months and years of effort and money expended by the claimant don't amount to a qualified EJIA application? No. Sounds like it. Okay, and I'll explain. Help me understand why I'm wrong. Okay, I'll explain. The example I gave just happened to be a distinction between a Step 4 finding and a Step 5 finding. I can give you an example of where in this particular case, which was a Step 4 case, the agency would not have been substantially justified in arguing the past work finding. That would have been if we didn't have any other information in the record that showed what the requirements were of her past work. If we just said, oh, it was an error, the ALJ's error, we're still substantially justified, but I didn't have that other information. So, for example, in this case, we have reports from her. It's, I believe, page 71 in the record that state how she performed her job. She said the greatest weight she lifted was 20 pounds. I think I understand your position, but I'm not sure I'm getting you to respond to the question I'm trying to ask, which is, is it the government's position that as long as somewhere in there, someplace in there, there's a piece of evidence that could be relied on, even though it was never relied on until after the fact, that as long as the nugget is in the room someplace, under the cushioned couch, the couch in the corner, that if it's found in the district court, that's enough to say no fees? Or does EJID make us do something more and say, look, you've got to come up with that sooner, because if you make the other side litigate all the way through, you'll pay a price for that in fees? Well, there are a couple of points. One is the hidden nugget, it's never, ever hidden. It's always there for plaintiff's counsel to also know. If they know their case and they know what's in the record, they can also make a determination as to whether the case is truly defensible. Isn't the burden on you folks, though? The burden is on the government to show substantial justification. Or substantial evidence? No, I thought the burden was on you to show substantial justification, too, if there's an EJID claim. Oh, yes, yes. Well, there's a bunch of different issues that you've raised. One would be you're saying is it in every case where there's some type of a hidden nugget, do they have to wait for us? All I'm saying is that if there is such a hidden nugget of information, it's not so hidden that it's not in the record. Is that the case here? Yes, it's in the record. No, no. Is it the case that there's a hidden nugget, or is it – I thought your argument was that there were several sufficient grounds to make a finding. Yeah, this is not a – And the one mistake was not outcome determined. Right. This is not a case where anything was hidden. We have plaintiff's own testimony about how she performed her past work in the record. We also have her vocational report. And one of the things that factors into the question that you just asked me is, is the agency's position, if it is somewhere, are we always substantially justified? I want to tie into this the standard of review in a Social Security case under Section 405J. That's significant here because it states that the district court has the power to enter, upon the pleadings and transcript of a record, the judgment affirming, modifying, or reversing, with or without remanding. I'm sorry. I just wanted to say within the record. I think your reluctance to concede that point, I think, is not helpful to your argument. I'm not sure what you mean that I didn't concede the point. It's in the – all I'm saying is that the standard of review allows for the agency to make arguments based on the record as a whole. That's all I mean. I wasn't trying – if there's another question, I can answer. All right. Good. Any other questions? Thank you very much. Thank you. Mr. Savoy? Mr. Savoy? To sum up, do we have a holistic approach to whether to affirm or deny or what is our approach? Well, I think the problem – Or circuit law or any other circuit. I think the problem with this sort of holistic approach is it's a kind of vague impressionistic approach. It lacks predictability. One judge is going to say one thing, another judge is going to say another. And I think if this court is going to lay down some kind of general rule – and I'd be perfectly happy to win simply on the first argument I made about the – but if the court is going to lay down a general rule, I think predictability – because the whole idea of EJ – the intent of the EJ was for – the intent of the EJ is to help people financially when they have to litigate against the government or to remove financial disincentives. I want to know when I'm taking a case, you know, if I win, am I going to get an EJ fee or not? I think that's going to affect my decision making. That's going to affect the decision making of other lawyers. And that's going to affect how people can get representation and if they can get representation. And the advantage of looking at – one of the advantages of simply looking at the issue or issues in which the government lost is, well, there you have some predictability. You know every judge can do it the same way. And that is also – it consists – for the other policy reasons I suggested in my brief, that's also good reasons for doing it that way. Well, the government's position basically is that there was good and sufficient facts, rationale, to hold for the government and that the agency just picked the wrong conclusion, but there was plenty there to rationalize a proper result insofar as the government was concerned. What's wrong with that argument? Well, it's not consistent with the law for one thing. The agency – the law is, the law under Taylor and Koop, if it's not supported by substantial evidence, it's going to be not substantially justified absent a showing of extraordinary circumstances. Well, they say there was substantial evidence that would have justified it. It's just the agency picked the wrong evidence, but there was evidence that would have justified it and that, therefore, this is not a lose-or-pay statute, that there was a rationale for properly holding for the government. They just picked the wrong conclusion. But that evidence, that hypothetical substantial evidence you're talking about isn't really relevant. I mean, it's no more – there could be – substantial evidence as a rule is applied to the evidence that's actually in the record and is actually the basis of the decision. Well, the government says it was in the record that substantial evidence justifying their position. It's just that the agency bought the wrong proofs. Well, the ALJ did one thing and the government did the other in district court, flatly inconsistently with Chenery, which is enough – which should be enough for Appellant to win. Thank you very much, Mr. Stiglitz. The case was well argued. We'll take the matter under advisory. Next matter is Littman v. Selko Partnership.